Ralph H. SILVER, Plaintiff,

v.

MOHASCO CORPORATION; Edward Curren; Raymond Greenhill; Frederick Woller; Herbert Brown; and James Cullen, Defendants.

No. 77–CV–472.

United States District Court, N. D. New York.

Oct. 17, 1978.

**2**

Powers & Ghandhi, Albany, N. Y., for plaintiff; Margrethe R. Powers, Albany, N. Y., of counsel.

Richard H. Lange, Amsterdam, N. Y., for defendant Mohasco Corp.

Bouck, Holloway & Kiernan, Albany, N. Y., for defendants Curren, Greenhill, Woller, Brown, and Cullen; Warner M. Bouck, Albany, N. Y., of counsel.

## MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, District Judge.

This is a private "complaint" suit instituted pursuant to the Civil Rights Act of 1964, Title VII, §§ 701 *et seq.*, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. §§ 2000e *et seq.*, alleging employment discrimination on the basis of religion. *See* 42 U.S.C. § 2000e–2. Plaintiff Ralph H. Silver was employed by defendant Mohasco Corporation, a New York corporation with offices in Amsterdam, New York, on July 15, 1974, in the capacity of Senior Marketing Economist. It is alleged that during his employment, plaintiff was mentally abused, deceived, pressured, and coerced by defendant Mohasco Corporation as well as by defendants Edward Curren, Raymond Greenhill, Frederick Woller, Herbert Brown, and James Cullen, individually and in their capacities as officials and employees of Mohasco Corporation, in an attempt to force plaintiff to resign because he was of the Jewish religion.

Plaintiff alleges that the individual defendants conspired with each other on behalf of defendant Mohasco Corporation to organize and implement a purposeful plan of discrimination and harassment, referred to as the "Woller Plan" in plaintiff's complaint, to be directed against persons of minority groups and religions. More specifically, plaintiff alleges that these defendants conspired to employ members of minority groups and religions as token employees in an attempt to defraud and mislead governmental agencies, the public, and the shareholders of defendant Mohasco Corporation by making it appear that Mohasco Corporation was an equal opportunity employer. It is alleged that this plan called for the hiring of token employees–to be followed by harassment to force their resignation. Thus, plaintiff asserts that he was both hired and fired solely because of his religious beliefs.

Plaintiff further alleges that despite the continuing harassment by the defendants

he refused to resign. On August 29, 1975, plaintiff was discharged by defendant Mohasco Corporation. Plaintiff asserts that his discharge was without warning, in spite of his efforts to perform satisfactorily, and on account of his religious beliefs. In addition, plaintiff alleges that since his termination of employment with defendant Mohasco Corporation the defendants have made false, derogatory, and malicious accusations to prospective employers of the plaintiff when asked for a reference, thereby causing plaintiff to remain unemployed.

On June 15, 1976, the Equal Employment Opportunity Commission ("EEOC") received a letter written by the plaintiff asserting a charge of discrimination. *See* 29 C.F.R. § 1601.11(b) (1977). This letter was forwarded to the New York State Division of Human Rights, which on February 9, 1977, found that there was no probable cause to believe that Mohasco Corporation had engaged in an unlawful discriminatory practice with respect to the plaintiff. Subsequent to its deferral to the Division of Human Rights, the EEOC began processing plaintiff's charge of discrimination. On August 24, 1977, the EEOC ended its investigation with a finding that there was no reasonable cause to believe that plaintiff had been discriminated against and issued a notice of right to sue. Thereafter, on November 23, 1977, plaintiff commenced this lawsuit.

Plaintiff seeks an injunction against the continuing unlawful employment practices of the defendants, compensatory damages against all defendants, jointly and severally, in the sum of $100,000.00, punitive damages against defendant Mohasco Corporation in the sum of $1,000,000.00 and each individual defendant in the sum of $100,000.00, and such other and further relief as the Court deems just and equitable. *See, e. g., Curtis v. Loether*, 415 U.S. 189, 196–97, 94 S.Ct. 1005, 1009–1010, 39 L.Ed.2d 260 (1974); *Pearson v. Western Electric Co.*, 542 F.2d 1150, 1151–52 (10th Cir. 1976).

It appears that plaintiff has also commenced an action in the courts of the State of New York for money damages in the millions against these same defendants. That action is apparently based on allegations of fraud, intentional infliction of emotional harm, libel, slander, invasion of privacy, and violation of plaintiff's civil rights. (Affidavit of Warner M. Bouck, Exhibit 1, filed January 27, 1978).

Now before this Court is a motion to dismiss, Fed.R.Civ.P. 12(b), on behalf of the individual defendants Curren, Greenhill, Woller, Brown, and Cullen on the grounds of lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted. Also before the Court is a separate motion on behalf of defendant Mohasco Corporation for summary judgment, Fed.R.Civ.P. 56, on the ground, *inter alia*, that this Court lacks jurisdiction over the subject matter because plaintiff failed to make a timely filing of his grievance with the EEOC as required under Title VII.

I

The basis of the individual defendants' motion to dismiss is plaintiff's failure to name them as respondents in his charge filed with the EEOC. It is axiomatic that a jurisdictional prerequisite to the commencement of a "complaint" suit under Title VII is the filing of a charge with the EEOC. This requirement not only puts the respondent named in the charge on notice of the alleged violation, but also permits the EEOC to go forward with attempts at conciliation or voluntary compliance before the filing of a judicial complaint. Defendants Curren, Greenhill, Woller, Brown, and Cullen contend that plaintiff's failure to name them as respondents in the proceeding before the EEOC deprives this Court of subject-matter jurisdiction over any claim asserted against them in this lawsuit.

It is clearly evident that plaintiff's verified complaint filed with the New York State Division of Human Rights named only Mohasco Corporation as a respondent. (Memorandum in Support of Motion to Dismiss the Complaint by Defendants Curren, Greenhill, Woller, Brown and Cullen, Exhibit C, filed January 27, 1978). Moreover,

plaintiff's Title VII charge that was filed with the EEOC based on plaintiff's letter received by the EEOC on June 15, 1976, and correspondence relating thereto not only fail to mention defendants Brown and Cullen at all but characterize only Mohasco Corporation as a respondent. (*Id.,* Exhibits A, B, D, F(1) & F(2)).

Title VII clearly states that, in cases dealing with private sector employers, if the EEOC dismisses a charge or does not enter into a conciliation agreement with the respondent or does not file a civil action on behalf of the charging party within a certain time period, then the EEOC shall notify the person aggrieved that

> a civil action may be brought *against the respondent named in the charge* . . . by the person claiming to be aggrieved . . . *within 90 days of the giving of such notice.*

42 U.S.C. § 2000e–5(f)(1) (emphasis added). It is undisputed that the individual defendants named in this lawsuit were not sent notices by the EEOC with regard to plaintiff's charge of discrimination, *see* 42 U.S.C. § 2000e–5(b); 29 C.F.R. § 1601.13 (1977), and that plaintiff's right to sue letter named only Mohasco Corporation as a respondent, *see* 42 U.S.C. § 2000e–5(f)(1); 29 C.F.R. § 1601.25 (1977). Furthermore, the record of the proceedings before the EEOC does not show that an investigation was conducted or that a determination was made by the EEOC with respect to the individual defendants named in this lawsuit.

It is important to note, however, that defendants Curren, Woller, and Greenhill are referred to in plaintiff's letter to the EEOC that alleged a violation of his Title VII rights. Nonetheless, in my opinion, the scant references to these individuals in plaintiff's letter can be read and viewed only as asserting that they acted in their corporate capacities on behalf of Mohasco Corporation and in pursuit of corporate objectives. This position is further supported by statements found in plaintiff's letter to the EEOC such as "*Mohasco* created the economist position to give token compliance with job anti–discrimination legislation."

(Memorandum in Support of Motion to Dismiss the Complaint by Defendants Curren, Greenhill, Woller, Brown and Cullen, Exhibit A, filed January 27, 1978) (emphasis added).

Furthermore, in my judgment, a substantial identity does not exist between defendant Mohasco Corporation and the five individuals named as additional defendants in this civil action to warrant an exception to the general rule that only those parties named in the charge before the EEOC can be brought before a federal district court in a private "complaint" action. *See, e. g., Chastang v. Flynn & Emrich Co.,* 365 F.Supp. 957, 964 (D.Md.1973), *aff'd,* 541 F.2d 1040 (4th Cir. 1976).

No determination or attempts at conciliation or voluntary compliance could have been made with respect to these individuals in plaintiff's proceeding before the EEOC solely because of defendant's failure to object to the omission of these individuals as named respondents in his charge filed with the EEOC. *See Bryant v. Western Electric Co.,* 572 F.2d 1087 (5th Cir. 1978) (per curiam). Thus, in my judgment, plaintiff's claim against defendants Curren, Greenhill, Woller, Brown, and Cullen must be dismissed because plaintiff did not name these individuals as respondents in his EEOC charge and because plaintiff did not pursue administrative relief with respect to these individuals prior to the commencement of this civil action. *See, e. g., Love v. Pullman Co.,* 404 U.S. 522, 523, 92 S.Ct. 616, 617, 30 L.Ed.2d 679 (1972); *Beverly v. Lone Star Lead Construction Corp.,* 437 F.2d 1136, 1139–40 (5th Cir. 1971); *Travers v. Corning Glass Works,* 76 F.R.D. 431, 432–33 (S.D.N.Y.1977).

It is clear to my mind that the tenor of plaintiff's charge filed with the EEOC was directed solely against his corporate employer. Evidently, this also was the view of the EEOC. While recognizing the liberality with which a court must view the procedural requirements of Title VII in favor of a charging party, *e. g., Smith v. American President Lines, Ltd.,* 571 F.2d 102, 105 (2d Cir. 1978); *Egelston v. State University*

*College*, 535 F.2d 752, 754–55 (2d Cir. 1976); *Weise v. Syracuse University*, 522 F.2d 397, 411–12 (2d Cir. 1975), I do not believe that this "liberality" should be carried to its extreme at the expense of the rights of an individual alleged to have violated federal antidiscrimination laws. Such a policy, under the circumstances of this case, would, in my judgment, circumvent the statutory requirements of notice and opportunity to engage in meaningful conciliation efforts. A plaintiff, especially one such as the plaintiff in this lawsuit who has had two years of law school training and who had benefit of the advice of counsel at some point during the pendency of his charge before the EEOC, should not be given a blanket reprieve from failing to abide by important statutory jurisdictional requirements.

Viewing plaintiff's complaint in a light most favorable to his position, as I must at this stage of litigation, the conclusion is still inescapable that plaintiff's failure to name defendants Curren, Greenhill, Woller, Brown, and Cullen as respondents in his Title VII charge filed with the EEOC was not a mere technicality but a fatal flaw warranting dismissal of his claim as against these individual defendants in this lawsuit on the ground of lack of jurisdiction over the subject matter. *See, e. g., Sabala v. Western Gillette, Inc.*, 516 F.2d 1251, 1254 (5th Cir. 1975), *vacated & remanded on other grounds*, 431 U.S. 951, 97 S.Ct. 2670, 53 L.Ed.2d 268 (1977); *Bowe v. Colgate–Palmolive Co.*, 416 F.2d 711, 719 (7th Cir. 1969); *Stebbins v. Nationwide Mutual Insurance Co.*, 382 F.2d 267, 268 (4th Cir. 1967) (per curiam), *cert. denied*, 390 U.S. 910, 88 S.Ct. 836, 19 L.Ed.2d 880 (1968); *Plummer v. Chicago Journeyman Plumbers' Local 130*, 452 F.Supp. 1127, 1133–35 (N.D. Ill.1978); *Travers v. Corning Glass Works, supra; Harris v. Commonwealth of Pennsylvania*, 419 F.Supp. 10, 13 (M.D.Pa.1976); *Scott v. University of Delaware*, 385 F.Supp. 937, 941–42 (D.Del.1974).

## II

Defendant Mohasco Corporation moves for summary judgment and dismissal of plaintiff's complaint on the ground, among others, that this Court lacks jurisdiction over the subject matter because plaintiff failed to make a timely filing of his charge with the EEOC as required under Title VII. Thus, the procedural history of this case is, for present purposes, of primary importance and must be detailed.

Plaintiff's first act, with regard to his claim of discrimination, was the submission of a letter to the EEOC, which was received on June 15, 1976, 291 days after his discharge. In general, Title VII provides that if an alleged unlawful employment practice occurs in a state which has an agency that can grant relief from such a practice, a charging party is required to first file a complaint with such agency and can file a charge with the EEOC only after the passage of 60 days from the commencement of proceedings in the state agency or termination of such proceedings, whichever is earlier. Civil Rights Act of 1964, Title VII, § 706(c), *as amended*, 42 U.S.C. § 2000e–5(c). The New York State Division of Human Rights is such a so–called "706 agency" under regulations promulgated by the EEOC. 29 C.F.R. § 1601.12(m) (1977). Therefore, the EEOC immediately forwarded plaintiff's letter to the New York State Division of Human Rights together with a notice of deferral that stated:

This charge is being deferred to your agency pursuant to Section 706(c) [42 U.S.C. § 2000e–5(c)] of Title VII of the Civil Rights Act of 1964, as amended. The Commission will automatically file this charge at the expiration of the deferral period, unless we are notified before the expiration of that period that your agency has terminated its proceedings.

(Motion for Summary Judgment, Exhibit B, filed February 14, 1978).

By letter dated June 18, 1976, the Division of Human Rights advised the plaintiff of its receipt of his letter to the EEOC and requested that he file a complaint with then within 30 days. On August 12, 1976, 55 days after transmittal of this letter by the Division of Human Rights, plaintiff filed a verified complaint with the Division of Hu-

man Rights charging that he had discharged on August 29, 1975, by Mohasco Corporation on account of his religion. (Motion for Summary Judgment, Exhibit D, filed February 14, 1978). Thereafter, on August 20, 1976, 66 days after receiving plaintiff's letter charging an unlawful employment practice, the EEOC notified the president of Mohasco Corporation that plaintiff had filed a charge of employment discrimination against the corporation. (*Id.*, Exhibit F). *See* 29 C.F.R. §§ 1601.13 (respondent to be served by EEOC with copy of charge within 10 days of filing) and 1601.12(b)(1)(iv) (60–day period of deferral commences upon EEOC mailing to "706 agency") (1977). It should be noted that the EEOC does not appear to have requested plaintiff to provide it with a formal and verified Title VII charge as required by regulation, *see* 29 C.F.R. §§ 1601.8, 1601.11 (1977), but rather apparently treated plaintiff's letter received by the EEOC on June 15, 1976, or possibly plaintiff's verified complaint filed with the New York State Division of Human Rights on August 12, 1976, as constituting plaintiff's charge before the EEOC. *See generally Georgia Power Co. v. EEOC*, 412 F.2d 462, 466 (5th Cir. 1969).

Mohasco Corporation responded to the EEOC's notice by raising an objection to the assumption of jurisdiction by the EEOC. Defendant Mohasco Corporation argued that plaintiff failed to file a charge with the EEOC within any applicable limitations period prescribed by Title VII.

Thereafter, on February 9, 1977, the New York State Division of Human Rights issued its determination that "[i]t cannot be ascertained that complainant's employment was terminated for reasons other than management's judgment that his job performance was unsatisfactory" and found that there was no probable cause to believe that Mohasco Corporation had engaged in the unlawful discriminatory practice complained of by the plaintiff. (Motion for Summary Judgment, Exhibit H, filed February 14, 1978). This determination was upheld by the New York State Human Rights Appeal Board on December 22, 1977. (*Id.*, Exhibit I).

The EEOC issued its determination and provided plaintiff with a notice of right to sue on August 24, 1977. The determination by the EEOC states:

> Respondent [Mohasco Corporation] is an employer within the meaning of Title VII and the timeliness, deferral and all other jurisdictional requirements have been met.... [However,] there is not reasonable cause to believe the charge is true.

(Motion for Summary Judgment, Exhibit J, filed February 14, 1978). Plaintiff commenced the present lawsuit on November 23, 1977, 91 days after transmittal of this determination and notice of right to sue by the EEOC.

■ In providing for "complaint" suits under Title VII, Congress evinced a preference for administrative conciliation over litigation. *See, e. g., Alexander v. Gardner– Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974). Consequently, the EEOC can bring a civil "complaint" action against a private sector employer only after the "informal methods of conference, conciliation, and persuasion" have failed. 42 U.S.C. § 2000e–5(b). *See also* 42 U.S.C. § 2000e–5(f)(1). Likewise, before a private "complaint" action can be brought to vindicate an alleged violation of Title VII rights, the EEOC, and in many cases a "706 agency" as well, must have had a opportunity to investigate and rule on the merits of the charging party's claim. Aside from complying with the appropriate deferral period mandated by Title VII, if applicable, a person claiming to be aggrieved cannot commence a private "complaint" action against a private sector employer until the EEOC has dismissed the charge *or* if within the passage of 180 days from the filing of the charge or within the 60–day deferral period, whichever is later, the EEOC has not entered into a conciliation agreement or filed a civil action with regard to the charge, after which time the EEOC is required to notify the charging party that a private civil action may now be commenced. 42 U.S.C. § 2000e–5(f)(1).

In addition to following the above—mentioned procedures, a private litigant must also abide by the statutory time requirements prescribed by Title VII for the filing of an unlawful employment practice charge with the EEOC. Pursuant to Title VII:

A charge ... shall be filed within one hundred and eighty [180] days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a [706 agency] ... such charge shall be filed by or on behalf of the person aggrieved within three hundred [300] days after the alleged unlawful employment practice occurred, or within thirty [30] days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier ....

42 U.S.C. § 2000e–5(e). In Title VII, however, Congress also provided that:

In that case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, [having a 706 agency] ... *no charge may be filed* ... by the person aggrieved before the expiration of sixty [60] days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated ....

42 U.S.C. § 2000e–5(c) (emphasis added).

It is undisputed that on June 15, 1976, the day on which the EEOC received plaintiff's letter alleging a charge of employment discrimination, plaintiff had not commenced a proceeding before the New York State Division of Human Rights. Therefore, under § 2000e–5(c), which is applicable under the circumstances of this case along with § 2000e–5(e)'s extended time period for filing, it would appear to be clear that plaintiff's charge could not have been immediately filed but must have been in "suspended animation" status until 60 days after a proceeding was commenced before the Division of Human Rights, *but see* 29 C.F.R. § 1601.12(b)(1)(iv) (60–day deferral period commences upon EEOC mailing to "706

agency") (1977), at which time plaintiff's charge would have been automatically filed by the EEOC. *See Love v. Pullman Co., supra,* 404 U.S. at 526, 92 S.Ct. at 618. Although the EEOC appears to have treated its deferral to the Division of Human Rights as *commencing* proceedings before that "706 agency" in accordance with § 2000e–5(c), *see* Motion for Summary Judgment, Exhibit F, filed February 14, 1978; 29 C.F.R. § 1601.13 (respondent to be served by EEOC with copy of charge within 10 days of filing) (1977), in my judgment, plaintiff's proceeding before the New York State Division of Human Rights was not commenced until August 12, 1976, when plaintiff filed a verified complaint with that agency. *Compare* 42 U.S.C. § 2000e–5(c) *and Love v. Pullman Co., supra,* 404 U.S. at 525 & n.4, 92 S.Ct. at 618, *with* N.Y. Executive Law § 297(1) (Human Rights Law) (McKinney 1972). *See* Motion for Summary Judgment, at 12–16 & Exhibits C, D & E, filed February 14, 1978.

Assuming *arguendo*, however, that plaintiff's proceeding under state law was commenced upon the EEOC's referral to the New York State Division of Human Rights by letter of June 15, 1976, the 60–day deferral period would have run on August 14, 1976, 51 days after the applicable time period for filing a charge based on plaintiff's discharge on August 29, 1975, had expired. 42 U.S.C. §§ 2000e–5(c), 2000e–5(e). Therefore, the EEOC could not have filed plaintiff's charge of discrimination until after the statutory time period for the filing of such a claim had passed.

At this point I feel I must point out what appear to me to be anomalous procedural modes of action within § 2000e–5(c) and § 2000e–5(e) of Title VII. As noted above, in view of the method that plaintiff utilized to bring his claim before the EEOC, plaintiff's charge could not have been deemed filed by the EEOC under § 2000e–5(c) until August 14, 1976, at the earliest unless the Division of Human Rights had terminated its proceedings in less than 60 days. If, however, plaintiff on June 15, 1976, went directly to the New York State Division of

Human Rights and instituted a proceeding before that agency and thereafter, within the next 9 days, notified the EEOC of his charge, then under § 2000e–5(e) his charge would have been deemed filed on June 24, 1976, the 300th day after his discharge, and would have been timely. This second procedural route, however, was not followed by the plaintiff in this lawsuit.

▮ Despite this anomaly I perceive of no sound reasons for recognizing a toll of Title VII's time requirements in this case. *See Electrical Workers Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976); *Keyse v. California Texas Oil Corp.*, 442 F.Supp. 1257, 1259 (S.D.N.Y. 1978). Although the time requirement for the filing of a charge with the EEOC functions as a statute of limitations, *see Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 371–72, 97 S.Ct. 2447, 2457, 53 L.Ed.2d 402 (1977); *but see Electrical Workers Local 790 v. Robbins & Myers, Inc.*, *supra*, 429 U.S. at 240, 97 S.Ct. at 449; *Alexander v. Gardner–Denver Co.*, *supra*, 415 U.S. at 47, 94 S.Ct. at 1019, and procedural requirements in a private "complaint" action should be viewed with liberality, *e. g., Smith v. American President Lines, Ltd.*, *supra*, 571 F.2d at 105, a toll under the circumstances of this case would only work to circumvent the dictates of Title VII itself.

Plaintiff was in no way hindered from pressing his charge of employment discrimination in any appropriate forum, *see, e. g., Alexander v. Gardner–Denver Co.*, *supra*, 415 U.S. at 47–49, 94 S.Ct. at 1019–1020, and the record before the EEOC reveals that plaintiff, who attended a law school for a period of two years, was represented by counsel at some point during proceedings before the EEOC and therefore, at least up until that time, obviously had opportunities to acquire knowledge of his rights and responsibilities under Title VII, *see, e. g., Smith v. American President Lines, Ltd.*, *supra*, 571 F.2d at 109–10.

In my judgment, plaintiff has not demonstrated that the circumstances of this case would justify a toll. *Compare Electrical*

*Workers Local 790 v. Robbins & Myers, Inc.*, *supra*, 429 U.S. at 236–40, 97 S.Ct. at 447–449, *and Smith v. American President Lines, Ltd.*, *supra*, 571 F.2d at 108–11, *with Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir. 1976), *aff'd by an equally divided court*, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977) *and Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975). Furthermore, in my opinion, it would not be appropriate to toll this time requirement in favor of a plaintiff who waited 291 days from the date of the alleged violation to notify the EEOC. *See generally Olson v. Rembrandt Printing Co.*, 511 F.2d 1228, 1231–33 & n.11 (8th Cir. 1975) (en banc).

Section 2000e–5(e) established a 180–day period of limitations on the filing of a charge with the EEOC if such charge arose in a state or political subdivision that does not have a "706 agency." This period of limitations is extended to 300 days if the alleged violation occurred in a state or political subdivision that has a "706 agency." The additional 120 days are intended to compensate for the deferral periods of Title VII and to allow a charging party additional time to pursue state–created remedies. *See Moore v. Sunbeam Corp.*, 459 F.2d 811, 825 n.35 (7th Cir. 1972) (Stevens, J.). Under § 2000e–5(e), as previously noted, a charging party could commence a proceeding before a "706 agency" 299 days after the alleged violation occurred and file a charge with the EEOC on the very next day. Nonetheless, under this same action, a charging party who, let us say 100 days after the alleged violation occurred, commences a proceeding before a "706 agency" and who is notified within 170 days that his proceeding has been terminated by that "706 agency" will be required to file his charge with the EEOC before the expiration of 300 days from the date the alleged violation occurred.

Similarly, under § 2000e–5(c), when a charging party notifies the EEOC of an alleged violation that occurred in a state or political subdivision that has a "706 agency" prior to the commencement of a proceeding under state or local law, the EEOC may not

file that charge before the expiration of 60 days after such a proceeding is commenced unless it is earlier terminated. Therefore, a charging party who has not first instituted a proceeding before a "706 agency" under circumstances as described above, must, unless the state or local proceeding is swiftly terminated, notify the EEOC of the alleged violation at least 240 days after the date of the alleged violation if he wishes his charge to be timely.

Although at first glance these time periods may appear unjust it must be remembered that such limitations are legislative enactments not reviewable in this Court. Furthermore, it is readily observable, that, in general, the periods of limitation will be longer than 180 days for those individuals, like plaintiff, who have alleged a violation occurring in a state or political subdivision that has a "706 agency." Yet,

> [t]here is no suggestion [in the legislative history of Title VII] that complainants in some states were to be allowed to proceed with less diligence than those in other states.

*Moore v. Sunbeam Corp., supra,* 459 F.2d at 825 n.35. Thus, to recognize a toll in favor of a plaintiff who waited 291 days after the alleged violation occurred to notify the EEOC would not, in my judgment, be in keeping with the congressional purpose of ensuring "expedition in the filing and handling" of such cases. *Love v. Pullman Co., supra,* 404 U.S. at 526, 92 S.Ct. at 619.

It has been held that the time period within which to file a charge under Title VII does not begin to run until the facts that would support such a charge are or should be apparent to a reasonably prudent individual. *See Reeb v. Economic Opportunity Atlanta, Inc., supra,* 516 F.2d at 931. It should be emphasized, however, that plaintiff, in his letter to the EEOC, stated that he "was suspicious . . . right at the start" of his employment with defendant Mohasco Corporation that he might be the victim of discrimination. Also, plaintiff's complaint alleges that he was the target of harassment and mental abuse from the first day of his employment with defendant Mo-

hasco Corporation. (Complaint, ¶ 37). Furthermore, plaintiff's complaint demonstrates that plaintiff was or should have been aware of the essential elements of his claim of employment discrimination well within the time requirements for filing of a charge, *i. e.,* some eight months prior to his sending a letter to the EEOC encompassing a charge of violation of Title VII. (*See* Complaint ¶¶ 59, 60).

In addition, plaintiff's assertion in his complaint filed on November 23, 1978, of a continuous pattern of identifiable discriminatory conduct, which was not alleged in his charge filed with the EEOC, does not, in my judgment, work to save plaintiff's untimely charge of discriminatory discharge. *See, e. g., Smith v. American President Lines, Ltd., supra,* 571 F.2d at 105–106; *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 473–74 (D.C.Cir. 1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Carter v. Delta Air Lines, Inc.,* 441 F.Supp. 808, 811–12 (S.D.N.Y.1977). This ruling is further supported by Part III of this memorandum–decision and order.

■ Plaintiff, however, requests this Court to rely on an EEOC regulation and hold that his charge was timely filed. Plaintiff cites 29 C.F.R. § 1601.-12(b)(1)(v)(A) (1977) which states:

> In cases where the document is submitted to the Commission more than 180 days from the date of the alleged violation but within the period of limitation of the particular 706 Agency, the case shall be deferred pursuant to the procedures set forth above: *Provided, however,* That unless the Commission is earlier notified of the termination of the State or local proceedings, the Commission will consider the charge to be filed with the Commission on the 300th day following the alleged discrimination and will commence processing the case. Where the State or local agency terminates its proceedings prior to the 300th day following the alleged act of discrimination, without notification to the Commission of such termination, the Commission will consider the charge to be filed with the Commission

on the date the person making the charge was notified of the termination.

*But see* 29 C.F.R. § 1601.12(b)(1)(iii) (1977).

The period of limitation for filing a complaint with the New York State Division of Human Rights is one year. N.Y. Executive Law § 297(5) (McKinney Supp.1977). Therefore, if August 29, 1975, is taken as the date on which plaintiff's claim arose, then both the deferral by the EEOC to the Division of Human Rights by letter dated June 15, 1976, and the filing of plaintiff's verified complaint with the Division of Human Rights on August 12, 1976, were timely. Furthermore, if 29 C.F.R. § 1601.-12(b)(1)(v)(A) (1977) is accepted as controlling, then plaintiff's charge must be deemed filed with the EEOC on June 24, 1976, the 300th day following the alleged violation of his Title VII rights. Following this line of reasoning, plaintiff's judicial complaint, which was filed on November 23, 1977, or 91 days after the EEOC's transmittal of a notice of right to sue to the plaintiff, would have been timely. *See generally Kirk v. Rockwell International Corp.*, 578 F.2d 814, 819 (9th Cir. 1978); *Tavernaris v. Beaver Area School District*, 454 F.Supp. 355 (W.D. Pa.1978).

In my judgment, this regulation cannot be used to save plaintiff's private "complaint" suit. Initially, it should be noted that the EEOC did not mail defendant Mohasco Corporation notice of plaintiff's charge within 10 days of June 24, 1976, nor does it appear that the EEOC began processing plaintiff's charge on June 24, 1976. In fact, the EEOC's notice of deferral to the New York State Division of Human Rights indicated that plaintiff's charge would be filed *at the expiration of the deferral period* unless the EEOC was notified of an earlier termination of proceedings by the Division of Human Rights. (Motion for Summary Judgment, Exhibit B, filed February 14, 1978). Therefore, the record before the EEOC is consistent only with the view that the EEOC deemed plaintiff's charge to have been filed at the expiration of the 60–day deferral period.

Although the EEOC accepted plaintiff's charge as timely, there is nothing in the record to show the basis for such a determination. Furthermore, it does not appear that plaintiff relied on 29 C.F.R. § 1601.-12(b)(1)(v)(A) when he notified the EEOC of his charge of discrimination. One thing is clear, however, and that is that this Court is not bound to accept the EEOC's determination in this respect as binding. *E. g., Weise v. Syracuse University, supra*, 522 F.2d at 413; *Carter v. Delta Air Lines, Inc., supra*, 441 F.Supp. at 812.

Moreover, in my opinion, 29 C.F.R. § 1601.12(b)(1)(v)(A) (1977) appears to be contrary to the plain language of 42 U.S.C. § 2000e–5(c) which states that under circumstances as presented herein "no charge may be filed" by the EEOC before expiration of 60 days after proceedings have been commenced before a "706 agency" unless such proceedings have been earlier terminated.

It is interesting to note that this precise language of § 2000e–5(c) was the subject of discussion during congressional debate concerning the 1972 amendments that became the Equal Employment Opportunity Act of 1972. A pronouncement of the managers at the conference on the bill to amend Title VII states:

The Senate amendment contained two provisions allowing the Commission to defer to state and local equal employment opportunity agencies. It deleted the language of existing law providing that no charge may be filed during the 60–day period allowed for the deferral and substituted a provision prohibiting the Commission from acting on such a charge until the expiration of the 60–day period. The House bill made no change in existing law. The Senate receded with an amendment that would re–state the existing law on the deferral of charges to state agencies. The conferees left existing law intact with the understanding that the decision in *Love v. Pullman*, [404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679] (1972) interpreting the existing law to allow the Commission to receive a charge

(but not act on it) during such deferral period is controlling.

Joint Explanatory Statement of Managers at the Conference on H.R. 1746 to Further Promote Equal Employment Opportunities for American Workers, *reprinted in* U.S. Code Cong. & Admin.News, pp. 2137, 2179, 2181 (1972).

It is not at all clear to me what the congressional purpose was behind this passage. In my opinion, the managers' reference to *Love* can only be viewed as directed toward a problem not encountered in this case. In *Love v. Pullman Co., supra,* all the Supreme Court held was that a charging party's failure to first file with an existing "706 agency" is not fatal to the subsequent prosecution of a charge of discrimination and that the statutory requirement of deferral to a "706 agency" necessarily created an exception to an EEOC regulation, 29 C.F.R. § 1601.11(b) (1977), which provided that a charge is deemed filed upon receipt by the EEOC. The Court merely approved of the practice of the EEOC whereby it would hold a charge of discrimination in "suspended animation" during the deferral period and then formally or automatically file it upon termination of the state or local proceedings. It is important to note that in *Love* the state proceeding was terminated and plaintiff's charge of discrimination was deemed filed by the EEOC at a time when the statutory time period had not yet passed. The plaintiff in *Love* had alleged a continuing violation of Title VII and therefore the issue before the Supreme Court concerned only whether a second "filing" *within the statutory time requirement* was mandated by Title VII. I should further note that I find inapplicable the Supreme Court's equating of "holding a charge in suspended animation" and "holding a charge in abeyance" in the context of the issue before this Court. *Love v. Pullman Co., supra,* 404 U.S. at 526–27 n. 6, 92 S.Ct. at 618–619. *Compare* 42 U.S.C. § 2000e–5(c) ("*no charge may be filed* ... by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law ....") (emphasis added) *with* 42 U.S.C. § 2000e–5(d) ("[i]n the case of any *charge filed* by a member of the Commission ... the Commission shall, before taking any action with respect to such charge, notify the appropriate [706 agency] ... and, upon request, afford them a reasonable time, but not less than sixty days ... to act ....") (emphasis added). In my judgment, there is a substantial difference between "holding a charge in suspended animation prior to filing" and "holding a charge in abeyance prior to processing" when what is at issue and is to be measured is the time period within which to file a charge.

Although there is authority, based on an analysis of *Love,* for the proposition that initial receipt by the EEOC of a Title VII charge prior to initiation of a proceeding before an existing "706 agency" tolls the time requirements for the filing of a charge with the EEOC, *see Richard v. McDonnell Douglas Corp.,* 469 F.2d 1249 (8th Cir. 1972); *Anderson v. Methodist Evangelical Hospital, Inc.,* 464 F.2d 723 (6th Cir. 1972); *Vigil v. American Telephone & Telegraph Co.,* 455 F.2d 1222 (10th Cir. 1972), it is not binding on this Court and I do not find its reasoning persuasive. Rather, I concur in the analysis and reasoning of Justice Stevens (then Circuit Judge) in *Moore v. Sunbeam Corp., supra,* 459 F.2d at 822–26, in which the Court of Appeals, Seventh Circuit, held that the filing date for purposes of Title VII's time requirements is the date of expiration of the 60–day deferral period unless the "706 agency" earlier terminates its proceedings. *See also Doski v. M. Goldseker Co.,* 539 F.2d 1326 (4th Cir. 1976); *Olson v. Rembrandt Printing Co., supra,* 511 F.2d 1228 (8th Cir. 1975) (en banc). In addition, I believe that this reasoning is further supported by the Supreme Court's decision in *Electrical Workers Local 790 v. Robbins & Myers, Inc., supra,* 429 U.S. at 236–40, 97 S.Ct. at 447–449, wherein the Court refused to extend this limitations period beyond the limits already established by Congress.

■ Therefore, while recognizing that the law in this area seems unsettled and

confused, it is my judgment that to the extent 29 C.F.R. § 1601.12(b)(1)(v)(A) (1977) seems contrary to the plain, although still complicated, language of § 2000e–5(c) and § 2000e–5(e) of Title VII, I find this regulation to be unauthorized by the statute. If this regulation is viewed as a legislative rule, in my opinion, it should be considered invalid because it was not promulgated pursuant to a statutory grant of power to make law, see 29 C.F.R. § 1601.12(a) (1977), authorizing the EEOC to extend the time requirements of Title VII. *See generally* 42 U.S.C. § 2000e–12(a); *General Electric Co. v. Gilbert,* 429 U.S. 125, 140–45, 97 S.Ct. 401, 410–412, 50 L.Ed.2d 343 (1976); *National Nutritional Foods Association v. Weinberger,* 512 F.2d 688, 696 (2d Cir.), *cert. denied,* 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 445 (1975). In addition, if it is to be viewed as an interpretative rule, this regulation is not entitled to "great deference" with regard to the issue before this Court, *see Pacific Gas & Electric Co. v. Federal Power Commission,* 506 F.2d 33, 37 n. 14 (D.C.Cir. 1974), and because, in my judgment, it is in conflict with Title VII itself, I find that this regulation does not have the force of law and is ineffective in this situation. *See Electrical Workers Local 790 v. Robbins & Myers, Inc., supra,* 429 U.S. at 240, 97 S.Ct. at 449; *Morton v. Ruiz,* 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974); *Moore v. Sunbeam Corp. supra,* 459 F.2d at 824. Moreover, it does not appear in the record that the EEOC ever relied on this regulation with respect to plaintiff's charge.

It is clear that Congress, in enacting Title VII, was concerned with the expeditious filing and disposition of such cases. *E. g.,* 42 U.S.C. § 2000e–5(f)(5). Yet, when the EEOC was given enforcement powers under the Equal Employment Opportunity Act of 1972 another important change was enlargement of the time requirements for the filing of a charge and commencement of a judicial action by a person claiming to be aggrieved. Pub.L. 92–261, § 4, March 24, 1972, 86 Stat. 104–105.

If the EEOC, in fact, followed the procedures advocated by the plaintiff, the EEOC would have deemed plaintiff's charge filed on the 300th day following termination of his employment, *i. e.,* June 24, 1976, thereby administratively reducing the 60–day deferral period mandated by § 2000e–5(c) to a total of only 9 days. This would have been 49 days before plaintiff actually filed his verified complaint with the New York State Division of Human Rights—such filing being clearly in conflict with the deferral policy of Title VII. This, in my judgment, the EEOC is not empowered to do. It is for Congress in its wisdom to further extend these present time requirements legislatively and not for administrative or judicial tribunals to so rule. *See Electrical Workers Local 790 v. Robbins & Myers, Inc., supra,* 429 U.S. at 240, 97 S.Ct. at 449; *DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, 311 (2d Cir.), *modified on rehearing,* 520 F.2d 409 (2d Cir. 1975); *Keyse v. California Texas Oil Corp., supra,* 442 F.Supp. at 1259.

### III

■ The defendants have raised several additional issues, one of which I believe should be addressed. Defendants contend that because plaintiff's charge filed with the New York State Division of Human Rights and the EEOC did not allege a continuing violation of Title VII, the allegations in plaintiff's judicial complaint concerning acts of continuing and post–employment discrimination should be dismissed.

The gravamen of plaintiff's letter received by the EEOC on June 15, 1976, is very specific in nature, stating that plaintiff was both hired and fired because of his religion, and in my judgment does not set forth a claim of a continuous violation. Additionally, plaintiff's verified complaint filed with the New York State Division of Human Rights is unquestionably limited to a claim of discriminatory discharge. Therefore, it is clear to me that the scope of the ensuing EEOC investigation was necessarily limited to the period of plaintiff's employment with defendant Mohasco Corporation. *See Hubbard v. Rubbermaid, Inc.,* 436 F.Supp. 1184, 1190–93 (D.Md.1977).

In my judgment, plaintiff's EEOC charge can be construed to allege only an isolated set of discriminatory circumstances directed at his own employment with defendant Mohasco Corporation and not a continuing wrong. Furthermore, plaintiff's allegations of continuing violations and post–employment discrimination in this civil action are, in my judgment, not similar or reasonably related to the acts or omissions alleged in his charge filed with the EEOC and are not such as one might reasonably expect to grow out of that charge. *See, e. g., Ortega v. Construction & General Laborers' Union,* 396 F.Supp. 976, 980 (D.Conn.1975).

This does not mean, however, that, under any set of circumstances, plaintiff's claim of post–employment discrimination in connection with statements made to prospective employers would not have been cognizable in this Court under Title VII if the proper preliminary administrative procedures had been followed. *See* 42 U.S.C. § 2000e–3; *Pantchenko v. C. B. Dolge Co.,* 581 F.2d 1052 (2d Cir. 1978); *Dubnick v. Firestone Tire & Rubber Co.,* 355 F.Supp. 138, 140–41 (E.D.N.Y.1973).

Title VII's statutory scheme mandates that a person alleged to be aggrieved not bypass the administrative machinery of the EEOC by seeking initial enforcement of Title VII rights in the courts. If a charging party does not utilize the administrative remedies made available by Congress, then such remedies might just as well not exist and alleged violations would be first tested in courts of law rather than through preliminary deferment to a specialized agency and informal methods of conciliation.

Thus, in my judgment, no circumstances have been shown that would warrant a finding of continuing and post–employment discrimination growing out of plaintiff's charge filed with the EEOC. *See, e. g., Ferguson v. Mobil Oil Corp.,* 443 F.Supp. 1334, 1337–40 (S.D.N.Y.1978). Therefore, all allegations in plaintiff's judicial complaint not contained in his EEOC charge should be dismissed. *See, e. g., United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Smith v. Amer-ican President Lines, Ltd., supra,* 571 F.2d 106–107 n. 7; *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398–99 (3rd Cir. 1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977); *East v. Romine, Inc.,* 518 F.2d 332, 336–37 (5th Cir. 1975); *Aungst v. J. C. Penney Co.,* 456 F.Supp. 370 (W.D.Pa.1978); *Edwards v. North American Rockwell Corp.,* 291 F.Supp. 199, 203–205 (C.D.Cal.1968).

## IV

Cases such as this are not easy ones and the review that was necessary of the voluminous submissions, statutes, and regulations most difficult. Nonetheless, courts are increasingly being called upon to decide delicate issues in this developing field of law. Thus, in situations such as this it can readily be seen that it is desirable for litigants to utilize effective and feasible administrative remedies, in accordance with proper procedural requirements, prior to entering the courthouse. Individuals claiming discrimination in employment in violation of these new laws are entitled to have their charges expeditiously and conclusively determined. Yet, at the same time it is important to remember that those on the defense side who have been alleged to have violated the mandates of our equal employment opportunity laws, a most serious charge, also have rights that should not be overlooked or minimized.

Accordingly, the motion to dismiss made by defendants Curren, Greenhill, Woller, Brown, and Cullen is hereby granted on the ground of lack of jurisdiction over the subject matter because plaintiff failed to file a Title VII charge with the EEOC naming these individuals as respondents. Defendant Mohasco Corporation's motion for summary judgment is granted and judgment shall enter in its favor dismissing the complaint against it as a matter of law on the ground of lack of jurisdiction over the subject matter because of the lack of a timely filing with the EEOC. Therefore, the complaint is dismissed in its entirety.

It is so Ordered.